*New-Haven,*
November,
1816.

Hotchkiss
*v.*
Downs.

---

## HOTCHKISS and another *against* DOWNS.

Though a parol contract, not executed, cannot be set up to defeat an existing right of action; yet a mere liability to pay money for another, without actual payment, being no ground of action, a

THIS was an action of *indebitatus assumpsit* for money laid out, paid, and expended for the defendant's use. The declaration contained a special count, stating several sums paid by the plaintiffs, at different times, to several persons, at the request of the defendant, and for his use and benefit.

The cause was tried at *New-Haven, August* term 1816, before *Swift,* Ch. J. and *Goddard* and *Hosmer,* Js.

On the trial, the defendant offered evidence to prove, that before the payment by the plaintiffs of the sums of money for which this suit was brought, there were various debts outstanding against the plaintiffs and the defendant, on which

parol contract regarding such liability will bind the parties. Therefore, where there were several outstanding debts, against the plaintiff and defendant, on securities which they had signed and indorsed for each other, for the payment of which they were reciprocally liable to the creditors, it was agreed between them, by parol, that the plaintiff should assume and pay a certain proportion of the amount, and that the defendant should pay the residue, and give the plaintiff a promissory note for a certain sum, which, with the payment to be made by him, should be considered as his proportion; the plaintiff paid to certain creditors a part of the outstanding debts, but less in amount than his proportion according to the agreement; and then, no payment being made or note given by the defendant, brought his action for money paid to the defendant's use; it was held, that the plaintiff was not entitled to recover.

they were jointly liable; that on a part of these debts the plaintiffs were liable either as promisors, or sureties for the defendant, and on the residue, the defendant was either promisor, or indorser for the plaintiffs; that before the bringing of this suit, and before the payment by the plaintiffs of the sums in question, there was a parol agreement between the parties, that the plaintiff should assume and pay a certain proportion of the amount of said debts, and that the defendant should pay a certain other proportion thereof, and also give the plaintiffs his promissory note for a certain sum, which payment and note should be considered as the defendant's proportion of said debts; and that the several payments made by the plaintiffs were made in pursuance of this agreement. The plaintiffs claimed, and offered evidence to prove, that the several payments for which this suit was brought, were made by the plaintiffs in consequence of their being promisors and sureties for the defendant, for and on account of his proper debts. It was not claimed by the plaintiffs, that they had ever fulfilled their part of said agreement; and it was proved, that the defendant had never paid what was agreed to be considered as his proportion of the debts, nor given the plaintiffs his note for the stipulated balance. On this state of facts, the defendant contended, that the plaintiffs could not recover in this form of action. The court instructed the jury, that if they should find the agreement proved, as claimed by the defendant, they must give a verdict in his favour; unless they should also find, that the plaintiffs had paid their proportion, or had paid a greater sum on account, and in part, of said outstanding debts, than they were, by the agreement, bound to pay; in which case, they must bring in a verdict in favour of the plaintiffs. The jury returned a verdict for the defendant; and the plaintiffs moved for a new trial on the ground of a misdirection. This motion was reserved for the consideration and advice of the nine Judges.

*N. Smith* and *Wales*, in support of the motion, contended, that the plaintiffs' right of action, for money laid out, paid, and expended, for the defendant's use, could not be defeated, by a mere parol agreement, unfulfilled, on either side, and abandoned, for aught that appears to the contrary, the mo-

*New-Haven,*
*November.*
*1816.*

Hotchkiss
*v.*
Downs.

ment it was made.   Suppose these facts had been stated in a plea in bar ; would it be good on demurrer ?

*S. P. Staples* and *S. Staples,* contra, adverting to the statement of the case, observed that the parties were mutually liable to third persons for each other, but neither had any right of action against the other, until he had paid a greater proportion of the outstanding debts than his proper share ; and the agreement was of use to shew what that proportion was, but was not relied on as a release of an existing right. The case is, in substance, nothing more than this.   The parties had made an arrangement respecting their mutual liabilities ; and while they were going on to carry that arrangement into effect, one of them stops, before he had performed his own part, and sues the other.

SWIFT, Ch. J.   In this case, the plaintiff contends, that the defendant sets up a parol contract not executed in bar of an existing right of action, when by law such contract can be no bar.

It is admitted, that a parol contract not executed cannot be pleaded in bar of an existing legal right.   It is also true, that a parol contract, when broken, cannot be released by parol ; but it is equally true, that it can be, before broken.

The argument of the plaintiff, in this case, is grounded on a mistaken assumption of a fact.   It is supposed, that this agreement is set up to avoid a legal right, existing at the time the contract was made ; but on examining the motion for a new trial, it will appear otherwise.   The plaintiffs and defendant had been indorsers and signers of notes for each other as sureties ; for which they were mutually liable, and a part of which had been received by each.   At the time the agreement set up by the defendant was made, neither party had made any payments of these debts.   Of course, the plaintiffs, at that time, had no right of action against the defendant. They were only liable to pay money for the defendant, in case he did not pay it ; but no right of action accrued until an actual payment ; for the mere liability to pay money for another as surety is no ground of action.   In this state of things, the parties came together, and having ascertained the proportion of each to pay, mutually agreed to pay it.   Here

New-Haven,
November,
1816.

Hotchkiss
v.
Downs.

was no parol contract to release or defeat an existing right of action ; for none existed. Before any right of action accrued, the parties agreed in what manner and proportion the debts should be paid. If a parol contract, before it is broken, can be released by parol, it follows, that the parties may agree in what manner it shall be paid, or satisfied. This was, then, a valid agreement, on good consideration ; and the parties were bound to pay the proportions they had ascertained. The plaintiffs, then, when they paid these debts for which this action is brought, were paying their own proper debts, pursuant to their agreement. They paid no debt of the defendant, or any money on his account, unless they paid more than was their proportion to pay, according to the agreement ; and the court directed the jury, if they found the plaintiffs had paid more than they were obliged to pay by that agreement, to find a verdict in their favour.

I am of opinion that the charge was correct, and that a new trial ought not to be granted.

In this opinion TRUMBULL, EDMOND, SMITH, BRAINARD, BALDWIN, GODDARD, and HOSMER, Js. concurred.

GOULD, J. From the view which I have taken of the case, I am unable to concur in the opinion of the Court. The claim of the plaintiffs is, in effect, that they, as sureties for the defendant, have paid the money demanded, in satisfaction of his proper debt. Thus far, the case is the common one, of an *indebitatus assumpsit*, for the recovery of money, which one person was bound to pay, and has paid, for the use of another. But it is objected, that the plaintiffs are precluded from recovering in this form of action, by the special agreement ; which, it is said, supersedes, or extinguishes the implied promise, that might, otherwise, have arisen out of the transaction, and imposes upon the plaintiffs a condition precedent, which they have not performed. There is no doubt, that the general *assumpsit*, which the law would otherwise imply, from the acts of parties, in certain cases, may be excluded, by a special undertaking, accompanying those acts. Thus, if upon a sale of goods, an express promise is made, to pay a fixed price for them ; the vendor cannot recover in an implied *assumpsit*, upon a

*quantum valebant :* and many similar cases might be stated, in which the maxim applies, *expressum facit cessare tacitum.* In all such cases, however, the special agreement is made at the time, and is, itself, a part of the original transaction, which constitutes the consideration ; and is always *repugnant,* in some respect, to the general promise, which the law would otherwise raise from the facts : so that the evidence, which establishes the express promise, necessarily *disproves* the implied one. And this, I take to be the precise ground, on which a special undertaking ever excludes an implied *assumpsit.*

But the case before us is open to no such objection. Here, there was, originally, a mutual implied promise, arising from the *act* of each party, in becoming surety for the other, that each would repay to *the other,* what the latter, as his surety, should pay for his use. Whereas, the express promise, made *after* the former was raised, is, that each party shall pay to *third* persons, what the other is bound, as surety, to pay for him. It is manifest, then, that the express and implied undertakings, though entirely distinct, are perfectly consistent,—stipulating payments to different persons, in different events ; but not varying the respective duties to which the parties were subject, before the special agreement was made. And as that agreement remains unexecuted on both sides, and is thus practically abandoned ; their rights appear to me, to be the same, as if it had never been made.

In this view of the case, the special agreement is, in effect, nothing more, than an *adjustment of the proportions,* which the parties were before, as between themselves, respectively bound to discharge. It might, therefore, as evidence of those proportions, be decisive between them ; but cannot, as I conceive, have any other effect. In the direction to the jury, however, the special undertaking, by the plaintiffs, to repay their proportion of the money borrowed, is treated as a condition precedent, upon the performance of which their right of action is made to depend. But I am wholly unable to perceive how their claim to recover in *this* action, can, in any view of the case, be affected by that undertaking. If the suit had been brought on the *special* agreement, the question, whether their engagement amounted to a condi-

tion precedent, might have arisen. But, as the action is founded upon the *implied* promise, I cannot discover, how that point could possibly be made. The only question, arising, in this action, out of the special agreement, is, whether it extinguishes the implied promise : and for the reasons already given, I think it does not. I am, therefore, of opinion, that the plaintiffs are entitled to a new trial.

*New-Haven,*
November,
1816.

Hotchkiss
*v.*
Downs.

**New trial not to be granted.**