## In the Court of Common Pleas of Dauphin County.

## MAYOR AND MORGAN *v.* KIRBY.

A contract was entered into between K. and N. for building a house for a certain sum, and whilst it was in course of erection it was blown down. K. then promised N. that if he would rebuild the house and complete it, he should be paid three hundred dollars additional. *Held* that the contract was without consideration, and he could not recover the three hundred dollars.

**Exceptions to an Auditor's Report.**

Opinion by

PEARSON, P. J. After a careful scrutiny of the auditor's report, we think that he has properly disposed of every question before him, with one exception—the effect of Kirby's promise to pay Novioch, the builder, three hundred dollars for reconstructing the house. On the 13th day of November, 1866, the parties, Kirby and Novioch, entered into a written contract by which the latter agreed to build for the former a dwelling house of particular description, and to complete the work by the first of April next following, Kirby to pay therefor the sum of $1,520, seven hundred and fifty dollars when the house was under roof, and the remainder in full when

it was completely finished. On the 29th of March the building was blown down by a storm of considerable violence. Whether the fall was occasioned by the want of foundation walls or the violence of the tempest is uncertain. Novioch himself proves that it would have been much safer had the walls been completed. From our view of the case, that question is unimportant, as the contractor must bear the loss under the contract, whether occasioned by the act of God, or his own carelessness. The house was not completed when it fell, and it is very manifest from the amount of work necessary to its completion that it could not have been finished by the first of April, or for a considerable time after. That is not, however, the turning point of this cause.

This contract was an entirety, and Novioch could not entitle himself to compensation or be relieved from damages, except by the entire construction of the building, for although he was entitled to be paid a portion when it was in part completed, yet he remained bound to see it finished, and if not done, although his work was destroyed by the act of God, he would have to re-erect it, or subject himself to an action, and at least refund the money paid. It may be considered a pretty well settled doctrine of the law, that if it becomes impossible to perform a contract on account of some unforseen contingency, the party promising must respond in damages, for he should have provided against it in making his bargain. Addison on Contracts, 1123-4; as where the party contracted to ship a certain quantity of grain from a specified place, and there was none there. 16 East, 201; 3 M. & S., 267; 15 M. & W., 261, or the exportation was prohibited by the government. So where a man had covenanted to raise a certain amount of coal annually from a mine, or pay a specified annual rent, it was no answer to the contract to show that coal was exhausted. Butts v. Thompson, 13 M. & W., 487. So when a quantity of stones were to be transported between certain points, and the water became too low to carry by boat, for the contractor must provide other means. Trulings v. Craig, Addison's R., 342.

All of these contingencies should have been foreseen and provided against in the contract. Says Parsons on Contracts, 2 Vol. 673, and where, from the acts of God, the contract cannot be literally performed, if it can substantially, it must be done. 2 Parsons on Contracts, 672 ; Addison on contracts, 1124. And performance is not excused. 26 Maine R., 361. To make the act of God a defence to the performance, it must amount to an impossibility, mere hardship or difficulty will not suffice. 2 Parsons, 672, and note of cases cited. Gilpin v. Consequa, 1 Peters' C. C. R., 86. See also, 2 Parsons on Contracts, first edition, pp. 184, 5 and 6, and notes w and z. In the present case the act of God might and would excuse the performance within the time specified, as that is not of the essence of the contract, yet it should be performed *cy pres* as

soon after the first of April as practicable. Impossibility might excuse the delay. The very nature of the subject shows that the contract was an entirety. No one contracts to build half a house, although he may agree to pay as the work progresses. Taking it then as settled that Novioch was bound to complete this work as soon as practicable, was there any consideration for Kirby's promise to pay him the three hundred dollars for performing his contract ? Where a specific sum is fixed as the price of goods sold and delivered or an agreed remuneration for work and services, a subsequent promise without any new consideration to pay an additional sum for the same work or services is a *nudum pactum*. Addison on contracts, p. 13, see Peake R., 102 ;  1 Marsh, 567 ;  3 Bos. & Pul., 612. So an agreement to discharge a debt on receiving a part thereof. Addison on C., p. 14; See 12 John, 426; 2 Hall, 185 ;  1 Ad. & Ellis, 113 ;  1 Smith's Leading cases, 147 and notes, 5 Bing. N. C., 351, 356.

So if the debtor be bound to give up the deeds of an estate, an agreement with a purchaser to deliver them for a consideration is void. Pothier p. 25; Addisons on C., 14 ; 7 M. & W., 641. So the promise to pay the men of a vessel for working at the pumps in time of a storm, because bound to labor to save the ship. Addison, p. 14. And where the crew was shipped from London to Melbourne and back, at £3 per month, the promise to pay those of the men who remained on board £6 per month for the return voyage, the most of them having deserted at Melbourne, was held to be without consideration, they being bound by contract to perform their duty. 3 Ellis & Bl., 359, (77 Eng. C. L. R., 558).

So a promise to a sheriff in consideration that he would serve a writ or to a witness if he would attend court, for it is the duty of each to perform for the legal fees. Addison, 14, 8 M. & W., 797. And the voluntary restoration of that which the law will compel a man to restore, is not sufficient consideration for a contract. 2 Conn., 140. No mere voluntary courtesy is sufficient consideration. Addison, page 12 ;  5 B. & C., 501; 1 Sid., 413; Hob., 105. In short, the performance of any act which the party is under a legal obligation to perform, cannot constitute a good consideration for a promise. Addison, 14 ; 2 Conn., 139 ; 2 Selden, N. Y., 369 ; 11 Vermont, 166.

In the present case Novioch was bound by his contract to build the house, and the promise by Kirby to pay him three hundred dollars additional for doing that which he was obliged to do, was merely gratuitous, was without consideration, and therefore not a binding contract.

The auditor, however, treats it as the compromise of a doubtful right, and therefore obligatory. There can be no doubt but that the compromise of a doubtful right is sufficient consideration for a contract.

1 Ark., 10 ; 1 Vermont, 4 ; S. C., 2 Verm't, 363. And it need not appear that there was an actual controversy or difficulty, it is sufficient that the parties thought at the time that there was a question between them, the issue of which might fairly be considered by both parties as doubtful. 1 Parsons on Contracts, 439.

It is sufficient that there was the supposition of a right, for the right must always be on the one side or the other.

It need not be shown to be a valid claim, for if that had to be proved the controversy would have to be settled. Such is not the test. It is sufficient that the party yielded to his adversary the right to contest the point. 12 Wend., 381-2. But ceasing to make complaints or bore or annoy is insufficient. Add., 13.

These principles are extremely broad, and go very far towards supporting compromises of rights about which there is any doubt. Had the auditor found in express terms that the parties had entered into the compromise of a right considered or treated as doubtful this court might have felt itself bound by the finding ; but we do not so understand the report. It merely assumes as a legal principle that such a settlement would amount to a sufficient consideration for a contract, without finding the fact in express terms, and when we look into the evidence we can find nothing to show that the parties treated the right as doubtful, or that Novioch ever claimed additional compensation on that ground. Take his own language and it proves no compromise. All that he says is "the same day it blew down I went to Donaldson to see Kirby, and see if he would help to bear the loss. It was too great for a new beginner. I saw him and he said he would see me in a few days. He did see me and we talked it over and he agreed to pay me $300, and clear me of all damages as far as the original contract was concerned. He was to pay me $300, in addition to the original contract paid $1,520. I then went on to build on this promise, and did rebuild it. I furnished the materials and the work, sufficient to cover the $300. It went into the house and the rebuilding. I then filed the lien." In the course of his last cross-examination he says : "I felt bound to go on to complete the contract if I had not had a subsequent arrangement." He was unquestionably so bound, and could not have been relieved by anything short of a release. All that is proved against Kirby amounts to nothing more than a mere voluntary promise to pay Novioch an additional sum for performing his contract, which he was bound to do without the gratuity, for it was nothing more. The money was not claimed as a right. It was not agreed to be given as a compromise. We cannot say in such a case that Kirby got his house built by reason of the promise, for he was entitled to have it under his contract. Novioch claimed the additional sum, not as a right, but because he was poor, "a new beginner," and could not af-

ford to bear the loss. However, this court might feel disposed to divide the loss between the parties, or hold Kirby to his promise, as a matter of *honor*, we cannot enforce it as a matter of *law*, especially against the creditors of Kirby, who will lose a portion of their debts, if this promise is fulfilled. Unless additional evidence is laid before the auditor, we feel constrained to declare the agreement to have been made without consideration, and consequently void. The case is referred back to the auditor to make a new distribution of the money in court, according to the principles laid down in this opinion, but with liberty to take additional evidence if offered, and to be governed in his decision by the whole of the evidence.

NOTE.—An appeal was taken to the Supreme Court in this case, but the counsel of appellant, being satisfied that the law was as decided, abandoned the case.